Good morning, Richard Rome appearing for Mr. Herring. I'd like to address first the, uh, our, I'm sorry, Richard Rome. He, he, he did give it, he just needs to get closer to the microphone. I'd like to address the sentencing issue that we raised, which was our, the third issue in our brief, your honors. On the acceptance of responsibility? Yes. On the acceptance of responsibility issue under the sentencing guidelines 3E1.1 provides for a reduction in the, in the sentencing guidelines if a party accepts responsibility for his conduct. Did he ever admit all of his guilt? Well, I think he, I think he wanted to and, and basically. Well, but did he? Well, at a hearing on May 8th. Now, you're not answering my question. He, he, he did. He did not. He said, I'll go to trial before I'll do that. But he also said, I want to plead guilty to my possession of the methamphetamine that I had. He wanted to plead guilty to one of the counts, but not the other. That's absolutely, that's absolutely correct. So he never admitted all of the counts. Well, that's true. He didn't admit all of them, but the only reason. Did he ever truthfully admit the conduct? Well, he stood up and said, I want to plead guilty. So to me. He wanted to plead guilty to one count. That's correct, but the only reason he wasn't, he was offered one count. His lawyer never gave him the plea agreement. And therein lies the, the wrinkle in the case. Well, the wrinkle in the case isn't before us, that wrinkle. Well, that's really the crux of the case is he was offered one count. His lawyer did not convey that offer to him. It was in a written plea agreement. A second offer was made about four months later. This is in July and November of 2006. He never received that plea agreement. He then wrote a letter to the court asking, why am I the only defendant here in this multi-defendant case who has not been offered a plea agreement? Do you really think, now counsel, I'm, I'm just trying to put it to you pretty straight. Do you really think that all of this evidence, based on our standard of review, on clear air for just for an adjustment of acceptance of responsibility, is going to change the result? I would hope that it would. Just because of what he and his counsel did, which wasn't even in front of the district court? Well, it's very few criminal defendants who will get up in front of a courtroom and say that they want to plead guilty. I don't know if I've ever seen that. Well, I've been in a lot of courts and I've seen it a lot, so. Well, and I don't know if they got acceptance or not in those cases. But I guess, I guess all of the facts, we have to look at the totality of the situation. And if somebody's offered a deal, he, he does not get it from his attorney, and then later finds out about it and says, I'll take the deal, and doesn't get it, at least he stood up and, and, and said, you know, I, I want to do something to alleviate which sentence I'm going to get. There was also problems with his trial attorney. Apparently, he had some illness in the family. They had a contentious relationship. They hadn't communicated in months. And ultimately, it was the defendant who suffers the consequence of that. And I would sure hope that the court would seriously consider reducing what his offense level ultimately was, which was a defendant many years in prison so far. It would sure seem that when somebody's willing to step up to the plate. Seems to me he's got some pretty good adequate relief for that. We got a lot of habeas stuff going on on a daily basis. And so I think that's where we go. But I'm just, I'm again trying to get you to focus on the fact that I have a standard to review for an adjustment for an acceptance of responsibility. And he declined to plead guilty to both counts. Chose instead to go to trial. And he never admitted the conduct for which he was convicted. Well, I understand what, what the court is saying. And I do understand what, what the, you know, the review is. And, you know, we, we have the facts as they are. And I can't, I can't, you know, mold them any differently. But at least he did stand up. With respect to a habeas petition, he'll probably be out by the time that would ever get resolved. By the time those things wind their way through the system. He's, you know, because he'll be out in a year and a half or so. He's done a tremendous amount of time already. I would just ask the court to take another look at that. All right. With respect to the other issues, there's a search and seizure issue. There is. I mean, I think it's been fairly well briefed. I'd be willing to submit that on the brief subject to rebuttal argument with what the government may say on that. There was some, you know, it's a traffic stop type of a case. It's my understanding you don't challenge the seat belt stop prior to this. Well, the original stop was not challenged in the district court. That, that's correct. I would just say maybe those facts can be used with respect to subsequent conduct of the officers, but I think the record is, I can't argue that the record is not clear on that. They, they did not specifically challenge the initial stop. Very clear on that. Yeah, I mean, that's, that is, I mean, it's clear. It's not clear. No, it's clear. I mean, there's an order and they, they didn't, they didn't challenge that particularly, which is problematic, realistically, for the, for the search and seizure issue. But like I say, I was That's what I thought. Yeah, I mean So maybe you go to the next issue. Well, you know, the second issue that we briefed to is, I think that's fully briefed, whether there was sufficient facts, in this case, for a conviction other than just a possession. He was convicted of conspiracy. This gentleman, most of his conduct, he was tried with a co-defendant. There was a lot of testimony related to people that he had nothing to do with. And he was caught on a couple of wiretaps and then subsequently arrested when he was stopped with, with the drugs. It would just seem to me that Well, here's what I see the facts to be, that the jury could look at. Because we're, again, I've got the evidence and the light most favorable to your opposition. And so I'm trying to say, well, what facts are there? There was a first telephone call. Would not have asked for a cutting agent if we're going to sell to the defendants. So they were going to sell to a third party. Turned the defendant because he would already, they already had an agreement to sell and buy from others. There was a March telephone call. It involved a third party. This time to sell to that party. And when he was stopped, he was to sell to a third party, was picking up more because the first sale went bad. Those are what we have in the evidence. You're saying that's not sufficient to go with conspiracy? I think that, I think that what happens is when there's, when you have guns confiscated and other things that this gentleman was not involved with. There was numerous phone tap conversations, most of which he had nothing to do with. And I think the court could take a close look at that, decide whether a conviction for possession is enough. He never, they never caught him really selling anything. It was some phone calls interpreted in some fashion through coded conversation. So we don't know exactly what was being said. And he was never caught selling anything. So, I mean, I do realize there's some calls. I think the court could examine it, take a look, see if there actually is a conspiracy with this man or if he was tainted by the evidence of the co-defendant. And the 30 or some odd calls that came in that were unrelated to Mr. Herring. With that, I'll save a minute if I could. You bet. Minute seven, and I appreciate it. Thank you. Appreciate your argument, counsel. Yes. Good morning. May it please the court. Daniel Levin on behalf of the government. Let me start with the acceptance issue. I think this is the defendant's burden to show acceptance. The 3E1.1 lists out a whole bunch of things you can do to show acceptance. The first of which is to accept that you did truthfully admit the conduct of the counts of conviction, which the defendant hasn't done. Just to start at the end point of the sentencing, the defendant comes to sentencing and he allocutes. His allocution is just a sentence. He says, I apologize to the court for being here, essentially. But there's no showing in sentencing that now he's seeking acceptance and he actually accepts. He is relying on this willingness to take a plea on the terms that would be agreeable to him before trial. And it's clear he was willing to take a plea so long as he could get the terms he wanted. That's certainly true, I think, in almost every case that goes to trial. There would have been a plea that would have been acceptable to a defendant. But that's different from acceptance of responsibility. The district court here didn't clearly err when it denied acceptance on this record. As to the other two issues, unless the court has questions, I won't address the suppression issue. I'll just say very briefly on the sufficiency issue, this is not a case like the Umagant case where the defendant relies upon, where it's just a minimal one-time interaction with the other conspirators. This is a defendant who's back and forth, back and forth with Mr. Sanchez in different roles. They're talking about cutting agent. He's picking up drugs and distributing them to other individuals. And then in the march calls, he is providing the drugs to Mr. Sanchez. And I think it's noteworthy, the first march call starts with Sanchez asking the defendant Herring, do you have some more of that? Suggesting, I think quite reasonably, this isn't the first time that Herring has provided drugs to Sanchez. So there's a lot of evidence here of some interaction. I'd also just note, it wasn't included in our brief, but at trial there actually was a transcript read into the record of an additional call back in November where they're talking, not directly about drugs, but they get on the phone and Herring says to Sanchez, there are a bunch of search warrants going on. Eighty-seven search warrants. He must have seen in the news or something like that. And they say, do you think they're going to hit my house? Do you think they're going to hit my house? And this is now three months before these other calls. And they're worrying about it. There are going to be search warrants. So they clearly were collaborating over a period of time. And unless the court has any questions, I'd submit. Questions. Questions. Questions. Questions. Judge Fletcher. No, I have none. All right. Thank you very much, Counselor. Thank you. You're out of time, but if you want 30 seconds to sum up, I'll give it to you. No, I have nothing yet, Your Honor. Thank you very much. All right. Thank you very much. Appreciate your argument. This is Case 10-50001, the United States of America v. Herring, and it is submitted.
judges: Brewster, Fletcher B. , Smith N. R.